IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JORGE CASANOVA,

       Petitioner,

v.                                                                    CIV 07-1198 JB/KBM

CHEL HECHTER, New Mexico
Corrections Department,
Probation and Parole Division, et al.,

       Respondents.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

Petitioner Jorge Casanova is a Cuban national who was convicted of six

counts of sexual offenses with a minor and was sentenced to a total of ten years

imprisonment and five years supervised probation.  Judgment entered in February

2002.  *Exh. A.*  A month later, the then-Immigration and Naturalization Service of

the U.S. Department of Justice filed a detainer.  *Exh.* C.  For reasons that are not

entirely clear, but perhaps in part due to Casanova's advanced age and health

conditions, he had only served five years of the sentence when he was granted a

two-year term of parole in December 2006.  Parole began in March 2007 and

service of that is under the supervision of New Mexico.[1]   However, he is being held

by the Immigration and Customs Enforcement Agency (ICE) in El Paso, Texas,

pursuant to a detainer that notices an order of deportation.  *Doc. 8 at 1 & Exh. C.*

This matter is before the Court on Casanova's petition seeking federal

habeas relief under 28 U.S.C. § 2254 and its many attachments, as well as

Respondents' Answer.  *See Docs. 1, 8.*  Because he filed after the effective date of

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its

standards apply to this case.  *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429

(2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997).  Because all of the issues

can be resolved on the federal record, an evidentiary hearing is unnecessary.  *E.g.,*

*Schriro v. Landrigan,* ___ U.S. ___, 127 S. Ct. 1933, 1940 (2007); Rule 8(a), RULES

GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.  I

recommend that the § 2254 petition be dismissed with prejudice.

---

[1]  *See, e.g., Doc. 8,* Exh. B (certificate of parole beginning March 2007 and to expire
February 2009 unless extended); *id.,* Exh. E at 28-30 (docketing statement claim in April 2002
that sentence was cruel and unusual because of Casanova's known "health situation"); *id.* Exh.
BB at 7, 10-32 (district court's detailed decision on state postconviction claims including
testimony presented at an evidentiary hearing held in July 2006 on a counseled motion to
reconsider sentence due to Casanova's age and health); *Doc. 1-5* at 4-8 (counsel and others'
documentation of Casanova's prison living situation and health).  Unless otherwise noted, all
citations to exhibits are those attached to Respondents' Answer.  *See Doc. 8.*

# I.  Background

The documents and opinions associated with the counseled direct appeal, counseled post-conviction motion to reconsider sentence, and *pro se* state habeas relief are particularly thorough.  *See Exhs. E, G-L, N, R-T, Y, BB.*  I incorporate them by reference.

Casanova came to the United States as a highly-educated political refuge who had been jailed and tortured.  He suffered physical and mental damage as a result of the torture and was in poor physical and mental health from the time the events took place through his incarceration.  One of results of the torture, possibly in combination with other genetic factors, was severely atrophied and unusual-looking genitals and an inability to achieve an erection.  After emigrating, Casanova worked in Albuquerque as a boxing coach and he had a falling out with his one of his pupils, a then fifteen-year old girl with a promising future.  The day after he told her he would no longer be her coach, she accused him of many instances of sexual crimes that occurred over the course of three months.  The allegations included acts that Casanova's experts testified were medically impossible, and an assertion that Casanova recently underwent penile reduction surgery and had pins in his penis.  Her original complaints resulted in twenty-four

3

separate charges, five of which did not go forward for lack of probable cause.  Both the victim and Casanova testified at trial.  Aside from the expert witnesses presented by the defense and the prosecution, the case boiled down to a "he said/she said" situation, and the jury's verdict reflects that it did not fully believe either one of them.  Of the nineteen counts that went to trial, one was dismissed by the trial judge, and the jury acquitted Casanova of twelve others, all of which were charges alleging any sort of penetration by Casanova.  Instead, the jury did convict him of six counts of either attempted intercourse with the girl or instances where Casanova had her masterbate him, fellate him, or watch porn with him.  *See, e.g., Exh.* G at 5-11 (description of Casanova's testimony, victim's allegations and jury verdicts); *id.* at 37 (chart showing the eighteen numbered counts, brief description, and jury verdicts); *see also generally, Exh. E* at 2-16; *Exh. G* at 1-13, 37; *Exh. H* at 2-9; *Exh. K* at 2-6; *Doc. 1-9* at 29-30.

Counsel appealed and raised seven issues, six of which were rejected on the merits by the New Mexico Court of Appeals: (1) sufficiency of the evidence; (2) trial court error to allow an officer to testify to the victim's allegations as a prior consistent statement; (3) trial court error in finding irrelevant the victim's relationship with her former boxing coach, which ended because the coach "fired" her difficult client; (4) trial court error in allowing State expert to testify that

4

injuries to victim could have been result of penetration; (5) denial of new trial; and (6) sentence was cruel and unusual.  The Court of Appeals found that counsel did not properly preserve an objection to the trial court allowing the victim to testify about counseling and declined to address the merits of that claim.  *See, e.g., Exh.* G at i-ii; *Exh. K* at 2-13.

After rehearing was denied and the New Mexico Supreme Court denied certiorari after briefing, post-conviction proceedings were instituted almost immediately.  Counsel moved to reduce Casanova's sentence based on health reasons and Casanova filed two *pro se* documents seeking state habeas relief.  *See, e.g., Exhs. L - AA.*  A different district judge presided over the post-conviction proceedings than the trial judge who presided over the trial and sentencing.  The district judge accurately described the substance of the state habeas claims, some of which were similar to claims raised on direct appeal.  He denied them all:  (1) ineffective assistance of counsel for calling Casanova to testify; (2) speedy trial; (3) perjured testimony by the victim's uncle warranted a new trial; (4) the victim punched a hole in the wall of the gym; (5) the "five pins" testimony by the victim; and (6) the video recorder.  *See Exhs. Z - BB.*

After the New Mexico Supreme Court denied certiorari, Casanova timely filed his federal petition.  The § 2254 petition raises a total of ten claims, which are

a combination of some of the claims raised on direct appeal and some of the claims raised in the post-conviction proceedings.  These claims relate to:  (1) victim's former coach; (2) victim's uncle; (3) motion for new trial; (4) cruel and unusual sentence; (5) five pins; (6) expert opinion about penetration; (7) counseling sessions; (8) hole in the wall; (9) video cassette recorder; and (10) speedy trial.  *See, e.g., Doc.* at 26 (summary list of federal claims).

## II.  Standards Of Review Under AEDPA

Under AEDPA standards, if a state court addresses a claim on the merits, a federal court cannot grant an "application for a writ of habeas corpus" unless the state decision was (1) "contrary to" or an "unreasonable application" of "clearly established" Supreme Court precedent or (2) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The Supreme Court and Tenth Circuit have discussed these deferential AEDPA standards in detail in many opinions and I will not reiterate them here.[2]  In addition, under *Strickland,* Petitioner must show that counsel's

---

[2] *E.g., Panetti v. Quarterman,* ___ U.S. ___, 127 S. Ct. 2842, 2858-59 (2007); *Fry v. Pliler,* ___ U.S. ___, 127 S. Ct. 2321, 3326-27 (2007); *Young v. Sirmons,* 486 F.3d 655, 662-63 (10th Cir. 2007), *petition for cert. filed 12/13/07; Snow v. Sirmons,* 474 F.3d 693, 696-97 (10th Cir. 2007); *Maynard v. Boone,* 468 F.3d 665, 669-71 (10th Cir. 2006), *cert. denied,* ___ U.S. ___, 127 S. Ct. 1819 (2007); *Stevens v. Ortiz,* 465 F.3d 1229, 1234-35 (10th Cir. 2006), *cert. denied sub nom, Zavaras v. Stevens,* ___ U.S. ___, 127 S. Ct. 1833 (2007).

conduct was constitutionally deficient and that but for the conduct, the result of the proceeding would have been different.  The inquiry is highly deferential. Failure to meet either prong defeats an ineffectiveness claim, and if it is easier to dispose of a claim on the prejudice prong, that is the course the court should follow.  *E.g., Strickland,* 466 U.S. at 689, 697; *Smith v. Robbins,* 528 U.S. 259, 286, n.14 (2000).

## III.  Analysis

### A.  Cruel & Unusual Sentence

Claim 4 of the federal petition asserts that when Casanova was in prison, he learned that another sex offender was allowed to leave the "Geriatric Unit" and be placed on parole.  He also complains of the conditions of the "Geriatric Unit" where he was housed for a time.  The conditions of confinement in the Geriatric Unit are not actionable in federal habeas.  *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 481 (1994).  The claim that Casanova should have been treated like the other inmate with regard to the amount of the sentence actually served in prison arguably raises a duration of confinement claim.  *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973).  However, his release to parole moots this particular claim because there is nothing to be redressed or granted by a favorable decision.  *Spencer v.*

*Kemna,* 523 U.S. 1, 7 (1998).  Therefore, I recommend that Claim 4 be dismissed.

### B.  *Speedy Trial*

In his speedy trial claim, Casanova asserts that he was 57 years old when the victim made her original accusation and 61 years old by the time he was sentenced. He acknowledges that his attorneys originally agreed to the delay, but contends there was no reason to do so because all of the State and defense witnesses were easy to locate and available at all times.  He maintains that the delay would be very difficult for "normal people" but was "destructive" to him given his health and mental problems.  *See Doc. 1* at 23-35; *Doc. 1-9* at 16-21.

The case did follow an unusual procedural path before trial, and both Casanova and the district judge have described those details.  *See id; see also Exh. BB* at 36-39.  I will not reiterate them or the minor variances in the two versions. For the purpose of federal habeas review, what is relevant is that Casanova does not take issue with the district judge's findings and both renditions of what transpired are in accord in pertinent part.[3]  At bottom, the claim turns on whether

---

[3]  Under § 2254(d)(2), a state decision rests on an "unreasonable determination of the facts" if Petitioner shows by "clear and convincing evidence" that the factual finding is erroneous.  Otherwise, the factual findings are presumed correct.  *E.g., Rice v. Collins,* 546 U.S. 333, 339 (2006); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); *Allen v. Reed,* 427 F.3d 767, 771 (10th Cir. 2005); 28 U.S.C. § 2254(e)(2).

a delay of some two and a half years violates the Sixth Amendment.[4]

The district judge held the claim procedurally-defaulted because it had not been raised on direct appeal, *id.* at 39-40, but alternatively considered the claim on the merits. He noted in the background discussion that Casanova had not raised an objection on speedy trial grounds in the trial court, his attorney was represented to have agreed to all save one of the State's requests for extensions, and in granting a defense motion for a continuance filed some five months before the trial was held, the trial judge noted by hand on the order that "'[Defendant] has agreed that if this matter is continued as requested they will waive - speedy trial.'" *Id.* at 38; *see also id.* at 36-39. The district judge decided that regardless of whether the amount of delay should be calculated at one year or more than two years

> given the nature of the charges, the issues apparent from the materials in the District Court files, the various extensions requested from and granted by the Supreme Court of New Mexico, the information contained in the Petition, Addendum and attachments thereto and the information contained in the District Court files as a whole, the Court simply does not believe that a sufficient

---

[4] The original indictment was filed in August 1999, Casanova was arraigned on that indictment in September 1999, and trial eventually commenced in December 2001 according to the judgment (November 2001 according to Casanova). In between the original indictment and trial, several extensions granted, all agreed to by the defense save one. There was some confusion whether the original indictment had been dismissed by Judge Jewell or was pending, and a subsequent information was filed and assigned to Judge Allen, who presided over trial and sentenced Casanova. *See Exh. BB* at 36-39.

> showing exists to support a determination of a violation
> of Casanova's Sixth Amendment constitutional speedy
> trial right.  See, e.g., <u>Barker v. Wingo</u>, 407 U.S. 514
> (1927) [more than 5 year delay]; <u>State v. Plouse</u>, 133
> N.M. 495, 64 P.3d 522 (Ct. App 2003), cert. den. [21
> month delay].

*Id.* at 40-41; *see also id.* at 36 (district judge held Sixth Amendment right to a

speedy trial does not attach until charges are pending, citing *United States v.*

*McDonald,* 456 U.S. 1 (1982)).

When the delay approaches one year, it is regarded as presumptively

prejudicial and thus means that the four *Barker* factors must be evaluated and

weighed.  *E.g., Jackson v. Ray,* 390 F.3d 1254, 1261 (10th Cir. 2004) (citing *Doggett*

*v. United States,* 505 U.S. 647, 652 n.1 (1992) ), *cert. denied,* 546 U.S. 834 (2005).

The four factors are:  "(1) the length of the delay, (2) the reason for the delay, (3)

whether the defendant asserted his right to a speedy trial, and (4) whether the

delay prejudiced the defendant."  *Id.* at 1262 (citing *Barker,* 407 U.S. at 530).

Given that neither of the district judge's calculations were under a year, and that

he cited the *Barker* decision, and mentioned factors such as the length of the delay,

the nature of the charges, absence of an assertion to the right, and extensions as

the reason for the delay, I cannot conclude the decision employed an approach

"contrary to" clearly established Supreme Court precedent.

10

Although the district judge did not discuss how he weighed the various factors, I cannot conclude that his ultimate result was unreasonable even if the length weighed heavily against the State.  "Most importantly, there is no clearly established Supreme Court law mandating a balancing that reaches a result contrary to the [trial judge's] decision."  *Id.* at 1267; *see also LaVoy v. Snedeker,* 2004 WL 3778602 at *17 (D.N.M. 2004) ("The Supreme Court has never issued a decision involving materially indistinguishable facts to the [Petitioner's] speedy trial issue.").  Indeed, even if the district judge

> made findings regarding the *Barker* factors that are contrary to clearly established Supreme Court precedent is insufficient to grant habeas relief.  Habeas relief is only available if there is no possible balancing of the factors that both supports [the state court's] ultimate decision and is not contrary to clearly established Supreme Court precedent.

*Jackson,* 390 F.3d at 1266-67.  I cannot say that is the case here either.

Accordingly, I recommend that Claim 10 be dismissed.

## C.  Credibility of State Witnesses

The heart of the remainder of the rest of Casanova's claims is that the State fact witnesses were not credible and he, therefore, should not have been convicted. He does not raise ineffective assistance of counsel or sufficiency of the evidence issues separately or in conjunction with these claims.

11

Even if he had, credibility of witnesses and weight of the evidence are not things a federal habeas court can reweigh even if it is evaluating the sufficiency of the evidence.  *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 319, 324-26 (1979).[5] Moreover, nothing in the submissions in the state court or here would cause this Court to find the Court of Appeals decision on sufficiency is unreasonable.   As a result, I also cannot conclude that the outcome of the proceedings would have been different had counsel prevailed on the trial court rulings that Casanova asserts were made to his detriment.  Given Casanova's limitations, I will address the remaining claims in more detail below, because in some instances he is incorporating what was asserted by counsel on appeal.

## 1.  Expert Testimony

At trial, a Dr. Ornelas testified.  The trial court did not allow her give an opinion that the victim's injuries were the result of sexual abuse, but he did let her testify that the injuries were caused by penetration.  *See Exh. K* at 10.  She testified that the "injuries sustained by [the victim] (a small bruise, laceration, and a friction rub) were traumatic and consistent with penetration."  *Id.* at 9.  She based her opinion on "the notes and diagram of . . . a nurse examiner."  *Id.*

---

[5]  The district judge dismissed some of the claims on that basis, too.  *See BB* at 44-50.

Referring to the claim raised on direct appeal, in Claim 6, Casanova asserts that

> Dr. Ornelas testified without any sustained proof that the bruises were provocated (sic) by penetration.  In that case all the boxers at the gym had the same situation and they will be diagnostic with penetration.  The testimony is contrary to the opinion of my doctors that examined me in several times . . .

*Doc. 1* at 17; *see also Doc. 1-7* at 40-47; *Doc. 1-8* at 1.

Although not entirely clear, it appears the New Mexico Court of Appeals characterized the defense as raising two issues:  "reliability" under *Daubert v. Merril Dow*, 509 U.S. 579 (1993) for the doctor's "sexual abuse" opinion, which was sustained, and "inadequate foundation" for the "penetration" opinion because of reliance on the nurse notes.  The court appears to have found the *Daubert* "reliability" argument procedurally defaulted because that was not the exact argument defense counsel raised in the trial court.  It held that as a matter of state evidentiary law that it was "correct" for the trial court to allow the doctor to rely on the nurses' notes in forming her opinion.  *See Exh. K* at 9-10.

I will not address whether the claim is procedurally defaulted because it is easier not to and here it appears that the state court construed the arguments too narrowly.  It was clear from the briefing that the trial court held a *Daubert* hearing,

the testimony at issue was the "proffer" about penetration, the "reliability" issue

was argued to and decided by the trial court, and the "reliability" argument under

*Daubert* was based on the doctors' reliance on a nurse's notes rather than an

independent examination of the victim or review of photographs of the victim's

injuries. *See Exh.* G at 20-26.

Nevertheless, I cannot find the state court result unreasonable. The *Daubert*

reliability requirement is not a constitutionally-based rule and thus a failure to

comply with *Daubert* alone affords no basis for habeas relief.[6] Under the

constitutional analysis for state evidentiary rulings, I find the admission of Dr.

---

[6] *E.g., Kinder v. Bowersox,* 272 F.3d 532, 545 n.9 (8th Cir. 2001) ("We are aware, of course, that Daubert  is an exegesis of Rule 702 of the Federal Rules of Evidence and governs the admission of expert evidence in federal trials only.  *Daubert* does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution."); *Stogner v. Cain,* 2008 WL 269078 at * 13 (E.D. La. 2008) ("this Court must note the limitations on the scope of its review regarding this claim.  Petitioner essentially invites this Court to examine whether the Louisiana courts correctly applied *Daubert.*  For the following reasons, that is an invitation which this Court may not accept. " *Daubert* is not premised on the [federal] Constitution." *Black v. Thomas,* No. 1:04-cv-567, 2006 WL 2547405 at *7 (M.D. Ala. Aug. 31, 2006); *see also Williams v. Withrow,* 328 F. Supp. 2d 735, 745 (E.D. Mich. 2004). Rather, it [is based on a federal evidentiary rule and] 'does not bind the states . . .' *Kinder . . .* ; *see also Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir. 1998).  Accordingly, *Daubert* has no direct applicability to federal habeas corpus claims and cannot serve as a basis for the granting of habeas relief.  *See Keller v. Larkins,* 251 F.3d 408, 419 (3rd Cir. 2001); *Payne v. Bobby,* No. 2:05-CV-050, 2006 WL 508784, at *23 (S.D.Ohio Feb. 27, 2006), *adopted,* 2006 WL 2583380 (S.D.Ohio  Sept. 6, 2006); *Hassinger v. Adams,* No. C 05-01011, 2006 WL 294798 at *13 (N.D.Cal. Feb. 7, 2006).").

Ornelas' testimony did not render the trial fundamentally unfair.[7]  The trial judge

plainly thought that counsel's arguments about reliability went to the weight rather

than admissibility of the testimony.[8]  That is what Casanova argues here – the

doctor's opinion about penetration should not have been allowed in light of what

---

[7]  *E.g., Harris v. Poppell,* 411 F.3d 1189, 1197 (10th Cir. 2005) "[w]e may not provide habeas corpus relief on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results.  Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint.") (internal quotations and citation omitted).

[8]  As provided in the defense brief on appeal:

> when defense counsel explained that Ornelas' . . . testimony lacked reliability, and lacked an adequate foundation, the trial court replied,

>> The question is, in the specialty in which she is, can she diagnose these things, and she's indicated that she has a long – and I've hear (sic) her testify before – a long history of good education in this field.  There are books that go to this.  There are other doctors that do the same thing she does, and I thing that's the question concerning Daubert, not if she's wrong in this particular case or not.

> (TR.3/69).  Defense counsel respectfully disagreed, and explained that he was not disputing her qualifications as a doctor and her training – the first inquiry under Daubert.  The second inquiry, counsel continued, is "***Does this opinion*** expressed by the doctor, regardless of her qualifications, ***meet the reliability standard*** in Daubert, *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 . . . (1999), and State v. Alberico, 116 N.M. 256, 861 P.2d 192 (1993)?  And ***that's another thing the court has to decide before opening the gate and letting this testimony in.***"  (Tr.3/69).  ***The trial court's response was: "You can cover that on cross-examination."***  (Tr.3/69).

*Exh.* G at 22-23 (emphasis added).

his doctors' testimony about his physical condition and inability to achieve an erection.  However, arguments based on the weight of the evidence are not a basis for habeas relief.[9]  Moreover, the jury did not credit the doctor's testimony or the victims' testimony about penetration and acquitted Casanova of those charges.

## 2.  Victim's Uncle

Casanova was convicted of having the victim fellate him at a "ditch bank," and there was testimony from the uncle of the victim that he observed the two of them at this location and/or had seen the act take place.  Two of the federal claims are based on the assertion that the uncle was not credible.

In Claim 2, Casanova asserts that the ditch bank  "is a dangerous place to make love or other things.  The court never went to see this dangerous place . . . My attorney advised the Court of this dangerous place."  *Doc. 1* at 10.  He attached photographs of the place to his petition and asserted the uncle's testimony was "incoherent" and "inconsistent" because:  the uncle said he was out taking a walk when he saw the incident, but there are no sidewalks and the path is difficult to maneuver; dogs bark noisily at people; he had poor eyesight; the car that he said he

---

[9]  *See Stills v. Dorsey,* 7 Fed. Appx. 856, 859 (10th Cir. 2001) (Stills' objections to the reliability of the PCR analysis go to the weight of the evidence rather than its admissibility. . . . The jury heard expert testimony from both sides regarding the accuracy of the PCR method. It was for the jury to determine the weight to give the DNA results in light of that testimony.  The trial court did not abuse its discretion in admitting this evidence.").

saw them in was higher than where he was standing; and he did not come forward until two months after the victim made the accusation.  Casanova asserts that the trial judge and jury should have "viewed" the scene.  On the other hand, he also asserts that during trial his "attorney talked a lot about this ditch bank and the incredibility of [the uncle's] statement."  *See Doc. 1-4* at 19-22.

Casanova raised this claim in his state habeas, but the district judge did not address it directly.  *See Exh. AA* at 6-7 (and pages of photographs following page 7). I do not find that counsel was ineffective in not asking for a view, as it was clearly counsel's trial strategy to stress the issue of whether the uncle's testimony could be found credible without having the jury see the actual spot.  Nor do I find the trial fundamentally unfair because no view was held.[10]

In Claim 3, Casanova claims that, before the trial was over but in a separate

---

[10] *E.g., Elizaldi v. Rawers,* 2007 WL 963284 at ** 24 -25  (E.D. Cal.2007) ("Here, Petitioner has not cited, and this Court has not found, any 'clearly established federal law' entitling Petitioner to a viewing of the crime scene.  Moreover, at trial Sneed's visual acuity was impeached.  Also, defense counsel raised questions concerning how dark Sneed's bedroom was on the day of the burglary and whether she had actually seen Petitioner through a peephole in her front door rather than outside her apartment. . . .  Photographs of Sneed's bedroom and apartment were introduced; however, the defense had ample opportunity to cross-examine Sneed about the photographs and to comment in closing argument about them.  Indeed, defense counsel argued to the jury that Sneed's identification of Petitioner was unreliable because of her poor eyesight, her emotional state immediately after the incident, her use of a peephole rather than direct line-of-sight, and the lack of light in her bedroom. . . .  From all of these circumstances, Petitioner was not prejudiced by his inability to view the crime scene and take pictures that could possibly present a different view of the apartment.  Accordingly, there has been no due process violation; hence, the issue is not cognizable in these habeas proceedings.").

proceeding to review the conditions of Casanova's release, the uncle lied under oath and said Casanova tried to assault him when in fact Casanova was elsewhere on that day.  The "perjury" during this proceeding outside the presence of the jury was the basis for the defense post-conviction motion for a new trial.  *Doc. 1* at 11; *see also Doc. 1-4* at 23-33.

On direct appeal the Court of Appeals rejected the claim under state law governing new trials because

> the trial court made no findings that [the uncle's] testimony at the hearing was false.  In the alternative, the evidence was impeaching, but not material to Defendant's guilt or innocence and, therefore the trial court did not abuse its discretion when it denied Defendant's motion for a new trial.

*Exh. K* at 12 (citing *State v. Volpato,* 102 N.M. 383, 384-85, 696 P.2d 471, 472-27 (1985) and *State v. Fuentes,* 66 N.M. 52, 58-59, 342 P.2d 1080, 1084 (1959)).  The district judge addressed this claim on the merits in the state habeas proceedings and rejected it because it had already been addressed and also on the merits under *Andrada v. State,* 83 N.M. 393, 492 P.2d 1010 (N.M. Ct. App. 1971) because in that case a "claim that defendant was convicted on prejudicial testimony states no basis for relief."  *Exh. BB* at 42-43; *see also id.* at 41-42.

These results are not unreasonable.  Due process only prohibits the knowing

18

use of perjured testimony by the prosecution.  *E.g., Mooney v. Holohan,* 294 U.S.

103, 112 (1935).  Furthermore, there is no clearly established Supreme Court

precedent that imputes knowledge to the prosecutor.  *See Smith v. Massey,* 235 F.3d

1259, 1271-27 (10th Cir. 2000), *abrogated on other grounds by Neill v. Gibson,* 278

F.3d 1044, 1057 n.5 (10th Cir. 2001) (en banc), *and cert. denied,* 534 U.S. 904

(2001).  Casanova has neither asserted nor met his burden of showing knowledge,

and the "'mere use of perjured testimony without the prosecution's knowing it was

perjured is not a denial of due process.'" *Nance v. Nelson,* 1995 WL 380803 at * 9

(10th Cir. 1995) (quoting *Gay v. Graham,* 269 F.2d 482, 486 (10th Cir. 1959)).

     Therefore, I recommend that Claims 2 and 3 be dismissed.

### 3.  Victim's Credibility

     The last five claims relate to Casanova's position that the victim was not

credible.

     In Claim 1, he asserts that victim's former coach should have been permitted

to testify as a "key witness" for the defense because she would have been able to tell

the jury that the victim was a "difficult student," drank, slept with her boyfriend,

lied about her boxing career, had a temper, and punched a hole in the wall of

Casanova's gym when he said he would no longer coach her, saying "'what a dirty

Cuban.'" *Doc. 1* at 8; *see also Doc. 1-2* at 1-36; *Doc. 1-3* at 1-40; *Doc. 1-4* at 1-16.

Claim 8 is more about the hole in the wall.  *See Doc. 1* at 20; *see also Doc. 1-8* at 10-15.

At the preliminary hearing, the victim's prior coach had testified that the victim "had a drinking problem, would not listen to her, was undisciplined, and purposefully tried to hurt another boxer."  *Exh.* G at 17.  Prior to trial, the State moved to exclude any of this testimony because it impugned the victim's character. The defense wanted to use the testimony to show why the victim ended up with Casanova for a boxing coach, and told the court that it did not want to impeach the victim's character with the testimony "'except to the extent [the victim] might testify no one has ever had a problem working with her.'"  *Exh. H* at 14.  The trial court "made a preliminary ruling that the testimony as to [the victim's] behavior with a prior coach was irrelevant."  *Id.*  Nevertheless, the prosecution itself then introduced the topic of a prior coach in opening statement for precisely the reason the defense mentioned – to explain how the victim came to become one of Casanova's fighters.  *Id.*  And, the victim herself testified that she "left" the first coach.  *Id.*  The defense wanted to cross-examine the victim on that point, to dispel any notion that she left the coach instead of having been "fired" and told to "never come back," and asked permission at sidebar to do so.  *See id.*  The judge held the issue irrelevant because the prior coach "is a woman and Defendant is a man."  *Id.*;

20

*see also id.* at 15.

The claim on appeal was that the victim was someone with a promising career, for whom boxing was her "whole life," and who denied becoming upset and denied punching a hole in the wall when Casanova said he would not coach her. In the defense's view, that the victim did not "leave" her prior coach voluntarily was relevant to her credibility and relevant to the defense theory that she had an extreme reaction to being fired by a second coach.   It argued that the trial court's failure to allow this cross-examination violated the Confrontation Clause and Due Process, both under state and federal law.  *Exh.* G at 18-19.

When the Court of Appeals reviewed this claim it held:  "[a]fter reviewing the record, this Court **cannot find any material facts of consequence** that are probative to [the victim's] testimony concerning her former boxing coach," and therefore the trial court "correctly held that such testimony was irrelevant."  *Exh. K* at 8 (emphasis added).  Given what the defense and prosecution presented in their briefs on appeal, however, this finding failed to address the constitutional arguments raised by defense counsel.  The district court in post-conviction review only looked at the docketing statement on direct appeal and the Court of Appeals opinion.  It did not look at the briefing in direct appeal where the substance of the claims were presented.  It viewed the issue as one of credibility and held the same

was not reviewable in state habeas.  *See Exh. BB* at 43-47.

The Supreme Court law on the subject could not be more well established. "[P]robably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointer v. Texas,* 380 U.S. 400, 404 (1965). Thus, "primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  "[T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [also] . . . allowed to impeach, *i.e.,* discredit, the witness." *Davis v. Alaska,* 415 U.S. 308, 316 (1974).

The right to confrontation is not absolute, however, nor does a violation provide automatic relief.  The Constitution entitles a criminal defendant to a fair trial, not a perfect one.  *E.g., United States v. Hasting,* 461 U.S. 499, 508-509 (1983).  And, "[g]enerally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  Therefore, "the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial" and, to state a claim,

22

Casanova must establish that a "reasonable jury might have received a significantly different impression of [the victim's] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986).  And, even if the limitation does present a "constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis." *Id.* at 684.[11]  The test for harmlessness in federal habeas is found in the Supreme Court's decision in *Brecht* – whether the error had a "substantial and injurious effect or influence" on the jurors' verdict.  *E.g., Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Horn v. Quarterman,* 508 F.3d 306, 322 n.24 (5th Cir. 2007); *Vasquez v. Jones,* 496 F.3d 564, 574 -75 (6th Cir. 2007).

The gist of the excluded cross-examination would be that the victim was a teenager who was difficult with authority figures.  That is certainly a matter of common sense well within the realm of jurors' experiences.  They were aware of the

---

[11]   Supreme Court Confrontation Clause jurisprudence involves two lines of cases – limiting cross-examination and admitting hearsay testimony.  The Supreme Court's more recent decision in *Crawford* is inapplicable because it involves the hearsay line of cases.  *E.g., Whorton v. Bockting,* 127 S. Ct. 1173, 1179 (2007); *Fensterer,* 474 U.S. at 294.  It is further inapplicable because Crawford issued no decision about harmlessness.  *Crawford v. Washington,* 541 U.S. 36, 42 n.1 (2004) ("The State also has not challenged the Court of Appeals' conclusion . . . that the confrontation violation, if it occurred, was not harmless. We express no opinion on these matters.").

importance of boxing to the victim, the timing of the complaint of sexual abuse, and the defense theory that it was made in retaliation for being dismissed by Casanova.  More importantly, jurors did not have an entirely favorable view of the witness' credibility as evidenced by its verdict.  They either believed she was exaggerating or outright lying in some respects.  I cannot conclude that additional cross-examination along the lines sought by defense counsel would have given them a "significantly different" impression of the victim's credibility or that any error in this regard was harmful.  This harmlessness finding is also dispositive of the other claims about the victim's credibility.[12]  I do not find the state courts' rejections of these claims "contrary to" or "unreasonable."  *See Exh. K* at 2-6, 11; *Exh. BB* at 47-50.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Casanova's § 2254 petition be dismissed.

---

[12]  That is:  in Claim 7, Casanova asserts that the victim should not have been able to testify about her counseling sessions and incorporates what was raised on direct appeal; *see Doc. 1* at 18; *see also Doc. 1-8* at 2-9; in Claim 9, Casanova asserts there was no video cassette recorder in his home from which to view pornography because of documented robberies, *see Doc. 1* at 22; *see also Doc. 1-8* at 16-19; and in Claim 5, he asserts that in light of his physical condition, the victim's story about seeing pins in his penis after reduction surgery is patently ridiculous, *see Doc. 1* at 15; *see also Doc. 1-6* at 34-37; *Doc. 1-7* at 1-38.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE